UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
HERIBERTO RIVERA,                   )
                                    )        CIVIL ACTION
                 Petitioner,        )        No. 23-12046-WGY
                                    )
           v.                       )
                                    )
SHEILA KELLY,                       )
                                    )
                 Respondent.        )
_____)

YOUNG, D.J.                                    January 22, 2025

**MEMORANDUM AND ORDER**

Pursuant to 28 U.S.C. § 2254 ("Section 2254"), Petitioner Heriberto Rivera ("Rivera") seeks a writ of habeas corpus on four grounds, claiming: (1) his Fourth Amendment rights were violated by the search and seizure of an apartment resulting in the improper admission of evidence at his trial; (2) the imposition of the Massachusetts Armed Career Criminal Act (the "ACCA") enhancement on Rivera's sentence based on two prior state convictions was error; (3) the sentence on his conviction of unlawful possession with intent to distribute cocaine is illegal; and (4) the Trial Justice's acceptance of Rivera's plea to enhancement convictions on the factual record was error. See Pet. ("the Petition"), ECF No.1. Rivera requests this Court discharge him from the custody of Respondent Sheila Kelly ("the

Commonwealth"). <u>Id.</u>  For the reasons stated below, the Petition is hereby DENIED and the action is DISMISSED.

## I.    BACKGROUND

On May 14, 2015, the Worcester police obtained a warrant to search a certain third-floor apartment that officers had surveilled Rivera exiting. <u>Commonwealth</u> v. <u>Rivera</u>, 99 Mass. App. Ct. 1131, 2021 WL 2692416, at *1 (2021) (unpublished) ("<u>Rivera I</u>"); <u>see</u> Search Warrant, Suppl. App'x ("S.A.") 136, ECF No. 14.[1]  The search of the apartment revealed "a firearm, ammunition, [7.89 grams of] cocaine, and personal papers of the defendant."  <u>Rivera I</u>, 2021 WL 2692416, at *1-2, *2 n.2.

Rivera was subsequently indicted on July 23, 2015 in the Superior Court for the following offenses: (1) possession of a firearm without a Firearms Identification ("FID") card, pursuant to Mass. Gen. Laws ch. 269, § 10(h); (2) possession of ammunition without a FID card, pursuant to Mass. Gen. Laws ch. 269, § 10(h)(1); (3) possession of cocaine with intent to

---

[1]  This Memorandum and Order incorporates the factual findings of the Superior Court and the Appeals Court with respect to Rivera's underlying trial, sentencing, and appeal. <u>See</u> 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

distribute, pursuant to Mass. Gen. Laws ch. 94C, § 32A(c).  See
Indictments, S.A. 125-27.

Prior to trial, Rivera filed a motion to suppress the
evidence that was obtained in the search of the apartment.
Rivera I, 2021 WL 2692416, at *1.  The Trial Justice held an
evidentiary hearing on Rivera's motion to suppress evidence,
which was denied.  Id.; S.A., Ex. 2, Mot. Suppress Tr., ECF No.
14-2; Findings of Fact, Rulings of Law and Order Def.'s Mot.
Suppress Evid., S.A. 138-143.

Rivera proceeded to a jury trial, where he was convicted on
all three counts on May 3, 2017.  Rivera I, 2021 WL 2692416, at
*1; S.A., Ex. 5, Tr. Jury Trial - Day 3 3-131 - 3-132, ECF No.
14-5.  Prior to sentencing, Rivera pleaded guilty to facts
concerning a prior conviction for a predicate offense under the
Massachusetts ACCA, Mass. Gen. Laws ch. 269, § 10G, subjecting
him to sentencing enhancements.  Rivera I, 2021 WL 2692416, at
*4; see generally Robert Barnhart, Meet the New Chief, Same as
the Old Chief: A Coherent Solution to the Problem of Prior
Conviction Proof Procedures, 126 W. Va. L. Rev. 515 (2024).
Rivera was sentenced to 9-10 years on each count, to run
concurrently.  Rivera I, 2021 WL 2692416, at *1; S.A., Ex. 6,
Tr. Enhancement and Sentencing ("Sentencing Tr.") 4-35 - 4-36,
ECF No. 14-6.

On appeal, the Massachusetts Appeals Court affirmed. Rivera I, 2021 WL 2692416, at *4-5. The Supreme Judicial Court of Massachusetts thereafter denied Rivera's application for further appellate review without prejudice, and remanded the case to the Appeals Court "for consideration of the question whether [Rivera's] plea to the [ACCA] sentencing enhancement . . . was supported by 'sufficient facts on the record to establish each element of the offense.'" Commonwealth v. Rivera, 100 Mass. App. Ct. 1124, 2022 WL 414146, at *1 (2022) (unpublished) ("Rivera II").

On remand, the Appeals Court confirmed its prior ruling, "answer[ed] that question 'yes'" and stated that it had not changed its decision. Rivera II, 2022 WL 414146, at *1. On June 3, 2022, the Supreme Judicial Court denied Rivera's application for further appellate review. Commonwealth v. Rivera, 489 Mass. 1108 (2022).

On September 1, 2023, Rivera filed this Petition. See Pet. The Commonwealth answered the petition and provided relevant portions of the record. Resp't's Answer Pet., ECF No. 13; S.A., ECF No. 14.

The Petition has been fully briefed. See Mem. Law Supp. Pet. Writ Habeas Corpus ("Pet'r's Mem."), ECF No. 19; Resp't's Mem. Opp'n Pet. Writ Habeas Corpus ("Resp't's Opp'n"), ECF No. 21; Pet'r's Reply Opp'n ("Reply"), ECF No. 24.

[4]

This Court held a non-evidentiary hearing on September 17, 2024.  Elec. Clerk's Notes, ECF No. 30.  The Court took the matter under advisement.  Id.

## II. ANALYSIS

For the reasons set forth below, the Petition is denied on the merits because Rivera fails to meet his high burden to obtain habeas corpus relief.  As an initial matter, Rivera does not tie his arguments directly to the grounds in the Petition, but rather posits three main arguments attacking: (1) the suppression motion denial; (2) the sentencing enhancement under the ACCA; and (3) the sentence on Count 3.[2]  The Court has nevertheless attempted to connect the arguments to address the four grounds raised in the Petition.

### A. Standard of Review

Rivera proceeds under Section 2254, which provides the habeas corpus standard applicable to state prisoners as codified by Congress under the Antiterrorism and Effective Death Penalty

---

[2]  It is apparent that the Petition was filed close to, or perhaps on the last day of, the statute of limitations; here apparently September 1, 2023, which may be why the memorandum differs somewhat from the contours of the Petition.  See 28 U.S.C. § 2244(d)(1) (one-year statute of limitation); Pet. 14. Further, in the Assented-to Motion for Scheduling Order, Rivera's counsel sought more "time to review the state-court record and to prepare a memorandum addressing the merits of the petition under the standards of 28 U.S.C. § 2254(d), and any affirmative defenses that were listed in the respondent's answer."  Assented-to Mot. Scheduling Order ¶ 6, ECF No. 12.

Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  That statute "unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (citation and internal quotation marks omitted); 28 U.S.C. § 2254(a).  As a corollary to Section 2254(a), "federal habeas corpus relief does not lie for errors of state law."  Id. (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)).

"To respect our system of dual sovereignty . . . the availability of habeas relief is narrowly circumscribed." Shinn v. Ramirez, 596 U.S. 366, 375 (2022).  "Indeed, it is not a second appeal, and the Supreme Court has 'recognized that federal habeas review cannot serve as a substitute for ordinary error correction through appeal . . . [Rather,] . . . [t]he writ of habeas corpus is an extraordinary remedy that guards only against extreme malfunctions in the state criminal justice systems.'"  Lees v. Alves, 695 F. Supp. 3d 139, 152 (D. Mass. 2023) (alterations in original) (quoting Shinn, 596 U.S. at 377).[3]

---

[3]  In addition to the exhaustion requirement, AEDPA also imposes a one-year statute of limitation.  28 U.S.C. § 2244 (d)(1); Sena v. Kenneway, 997 F.3d 378, 384 (1st Cir. 2021).

Before proceeding to the merits of a habeas petition, a petitioner -- here, Rivera -- ordinarily must demonstrate that he has taken all steps to exhaust his claims before the highest state court, and demonstrate that he has not procedurally defaulted those claims. Shinn, 596 U.S. at 378. The Court may deny a petition "on the merits, notwithstanding the failure of [the petitioner] to exhaust the remedies available in the courts of the State." 28 U.S.C § 2254(b)(2).

When assessing the merits of a petition, "AEDPA 'demands that a federal habeas court measure a state court's decision on the merits against a series of peculiarly deferential standards.'" Etienne v. Edmark, 119 F. 4th 194, 198 (1st Cir. 2024) (quoting Ayala v. Alves, 85 F. 4th 36, 54 (1st Cir. 2023)). Specifically:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted . . . unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) ("Section 2254(d)").

As for subpart one of Section 2254(d), "[t]he 'contrary to' clause applies when 'the state court arrives at a conclusion

opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" St. Jean v. Marchilli, 116 F. 4th 71, 78 (1st Cir. 2024) (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)). "'[C]learly established Federal law, as determined by the Supreme Court of the United States,' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" Id. at 78-79 (quoting Williams, 529 U.S. at 412).

The "unreasonable application" clause is applicable where the state court identified the correct legal principal but applied it unreasonably to the facts in the case at hand. Williams, 529 U.S. at 407-08.  The clause applies "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  St. Jean, 116 F. 4th at 79 (quoting White v. Woodall, 572 U.S. 415, 426-27 (2014)).

A habeas court reviewing a decision under this prong must ask if the state court's decision was "objectively unreasonable." Williams, 529 U.S. at 409.  Said another way, "[t]o meet [this] standard, a [petitioner] must show far more than that the state court's decision was merely wrong or even clear error; rather, the [petitioner] must show that the state

court's decision is so obviously wrong that its error lies beyond any possibility for fairminded disagreement." Etienne, 119 F. 4th at 198 (cleaned up).

As for subpart two of Section 2254(d), an unreasonable determination of the facts occurs when a state court's determination of facts is "objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Substantial deference is accorded to the state trial court's factual determination under this standard. Brumfield v. Cain, 576 U.S. 305, 314 (2015). Factual determinations are not unreasonable "merely because [this Court] would have reached a different conclusion in the first instance." Id. at 313-14 (quoting Wood v. Allen, 558 U.S. 290, 301 (2010)). Even where "'[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" Wood, 558 U.S. at 301 (quoting Rice v. Collins, 546 U.S. 333, 341-42 (2006)); see St. Jean, 116 F. 4th at 79. As for this subpart, the Court proceeds under this standard, and not 28 U.S.C. § 2254(e)(1).[4]

---

[4] The First Circuit recognizes that the Supreme Court has left open the question of whether 28 U.S.C. § 2254(d)(2) is subject to the rebuttable presumption under 28 U.S.C. § 2254(e)(1):

"If [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 562 U.S. 86, 102 (2011). "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state

---

Under AEDPA, a federal court may issue the writ if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Curiously, the next provision of the statute adds that "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

Because these two provisions seem to address essentially the same scenario, some tension is apparent. Courts long have grappled with "the question of how §§ 2254(d)(2) and (e)(1) fit together." Wood, 558 U.S. at 300. The Supreme Court has carefully left that question open. See id. We have emulated the Court's example. See Lucien v. Spencer, 871 F.3d 117, 127 n.4 (1st Cir. 2017). Nevertheless, "this circuit has routinely held petitioners to the § 2254(e)(1) 'clear and convincing' standard" -- although we have never done so "in a case in which resolving the fit between the two sections would appear to have made any difference." Smith v. Dickhaut, 836 F.3d 97, 101 (1st Cir. 2016); see, e.g., Hollis v. Magnusson, 32 F. 4th 1, 8 (1st Cir. 2022).

In all events, the question remains open in this circuit -- and we need not decide it today.

Porter v. Coyne-Fague, 35 F. 4th 68, 79 (1st Cir. 2022). The Court need not decide the issue in this case either because, as in Porter, "all roads lead to Rome: the outcome of [the Court's] inquiry would be the same whether [Rivera] only has to show that the state court decision 'was based on an unreasonable determination of the facts,' 28 U.S.C. § 2254(d)(2), or whether he also has to satisfy subsection (e)(1)'s 'clear and convincing' standard." Id.

[10]

courts are the principal forum for asserting constitutional challenges to state convictions."  <u>Id.</u> at 103.  Although Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," it "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  <u>Id.</u> at 102-03 (quoting <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)); <u>see</u> <u>Watkins</u> v. <u>Medeiros</u>, 36 F. 4th 373, 384 (1st Cir. 2022) (quoting <u>Shinn</u>, 596 U.S. at 377).

In sum, Congress has placed an extraordinarily high burden on Rivera to obtain habeas corpus relief under AEDPA.  He has not met that burden.

> **B. Rivera's Fourth Amendment Claim (Ground One) Is Barred Because Rivera Had an Opportunity for Full and Fair Litigation of His Fourth Amendment Claim in State Court.**

Rivera's first ground is that the Superior Court erred in denying his motion to suppress evidence on Fourth Amendment grounds.  This claim is barred under well-settled Supreme Court precedent that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence

obtained in an unconstitutional search or seizure was introduced at his trial."[5] <u>Stone</u> v. <u>Powell</u>, 428 U.S. 465, 481-82 (1976). As this Court has written, "[t]he First Circuit has observed that <u>Stone</u> 'stands for the proposition that a federal habeas court ordinarily cannot revisit a state court's disposition of a prisoner's Fourth Amendment claims,' while also finding 'an exception for instances in which a habeas petitioner had no realistic opportunity to litigate his Fourth Amendment claim fully and fairly in the state system.'" <u>Cavitt</u> v. <u>Saba</u>, 57 F. Supp. 3d 81, 90 (D. Mass. 2014) (quoting <u>Sanna</u> v. <u>Dipaolo</u>, 265 F.3d 1, 8 (1st Cir. 2001)).

Here, Rivera addresses neither <u>Stone</u>'s general rule, nor its narrow exception, but instead goes right to the merits, claiming that the circumstances surrounding the police officers' entry of an apartment violated his Fourth Amendment rights. Pet'r's Mem. 32-35. The Court cannot reach the merits under <u>Stone</u>, and Rivera's "failure to address the issue is a sufficient reason for the Court to deny relief on this ground." <u>Cavitt</u>, 57 F. Supp. 3d at 91. Nevertheless, even reviewing the matter under <u>Stone</u>, as the Respondent persuasively argues, Resp't's Opp'n. 20, Rivera's claim on this ground fails because

---

[5] The Court need and does not reach the exhaustion issue presented by the Commonwealth, Resp't's Opp'n 20 n.12, because the Court denies the requested relief on the merits. 28 U.S.C. § 2254(b)(2).

Rivera had ample "opportunity to litigate his Fourth Amendment claim fully and fairly in the state system," Sanna, 265 F.3d at 8, and did so.  As in Cavitt, "even if this Court believed that the state court had decided the issue wrongly -- which this Court does not -- habeas relief could not follow on this ground."  Cavitt, 57 F. Supp. 3d at 91.  Rivera's claim for habeas relief on Fourth Amendment grounds and the denial of his suppression motion (Ground One) is therefore denied.

### C. The Massachusetts Appeals Court's Determination that Rivera's Prior Convictions Were Predicate "Violent Crimes" Under the ACCA Sentencing Enhancement (Ground Two) Is Not Reviewable in Habeas Corpus.

Rivera argues that the Massachusetts Appeals Court erroneously and unreasonably applied Supreme Court precedent when imposing the ACCA enhancement, claiming that neither of his prior cited offenses -- for Assault and Battery with a Deadly Weapon and Assault with Intent to Kill -- were predicate "violent crimes."  Pet'r's Mem. 6-24.  The claims fails.

The three cases cited as applicable Supreme Court precedent -- Mathis v. United States, 579 U.S. 500 (2016), Descamps v. United States, 570 U.S. 254 (2013), and Borden v. United States, 593 U.S. 420 (2021) -- address the **federal** Armed Career Criminal Act, 18 U.S.C. § 924, and are not an applicable basis to bring a Section 2254(d) claim based on the Massachusetts ACCA.  See Haynie v. Cates, No. 19-CV-1967, 2024 WL 3718270, at *5 (E.D.

Cal. Aug. 8, 2024) ("Descamps and Mathis provide no support for petitioner's claim because those are ACCA cases decided on federal statutory grounds."). While it is true that, because the federal ACCA and Massachusetts ACCA are virtually identical, the Commonwealth's courts often "look to the to the Federal courts for guidance" as to the Massachusetts ACCA, Commonwealth v. Beal, 474 Mass. 341, 349 (2016), federal decisions interpreting the application of the federal ACCA are merely persuasive.

Furthermore, as the Commonwealth correctly argues, Resp't's Opp'n 15, whether Rivera's prior crimes of conviction qualified as predicates under the Massachusetts ACCA is an issue of state law that is not reviewable in federal habeas corpus. See Ware v. Dickhaut, 439 Fed. App'x 14, 15 (1st Cir. 2011) (per curiam) (unpublished) ("Given that Ware's prior drug dealing conviction did qualify as a predicate offense under the state armed career criminal statute -- a conclusion which the federal courts must respect -- the evidence clearly was sufficient to support Ware's conviction as an armed career criminal."); Widener v. Cowen, No. 18-10780, 2019 WL 330864, at *4 (D. Mass. Jan. 25, 2019) (Casper, J.) ("At bottom, the ruling on Widener's [Massachusetts] ACCA claim was a matter of a state court's interpretation of state law and as such is not appropriate for this Court's review. . . . Deciding which crimes qualify as

[14]

violent under the Massachusetts ACCA is a realm reserved for the Massachusetts courts and thus is not an appropriate ground for habeas relief."); see also Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). As a result, Rivera's argument fails in this aspect as this Court is bound by the decisions of the Superior Court and Massachusetts Appeals Court regarding the Massachusetts ACCA sentence enhancement.  Ground Two therefore fails.[6]

### D. The Massachusetts Appeals Court's Determination Regarding the Factual Basis of the Plea to Rivera's Enhancements Was Based Upon Sufficient Evidence.

In his reply, Rivera argues that he is not asking this Court to examine and apply state law.  Reply 7.  Rather, Rivera argues that there was insufficient evidence to uphold the ACCA enhancement, which he argues is a federal constitutional question.  Id.  In support of this argument, Rivera cites a Nevada federal district court case, Chrisman v. Howell, No. 19-CV-01219, 2020 WL 5367330 (D. Nev. Sept. 8, 2020).  In Chrisman, the court ruled that the habeas petitioner was not alleging a

---

[6] Rivera's petition recites in Ground Two, subpart (a)(3) as supporting facts that "State courts violated equal protection by not applying new rule to direct appeal that clarified that ABDW is not a crime of violence, when applied to similarly situated persons."  See Pet. 8.  This claim is not argued in Rivera's memorandum, and even if it is exhausted, it is meritless.

violation of state law, rather he was "alleging as a federal constitutional matter that the evidence presented **at trial** was insufficient to prove one of the elements as defined by state law." Chrisman, 2020 WL 5367330, at *3 (emphasis added).  Under Jackson, Chrisman is distinguishable because it does not relate to enhancements under a state-armed career criminal act and relates to sufficiency of evidence **admitted at trial**, as opposed to here where Rivera pleaded guilty to the ACCA enhancements. Rivera I, 2021 WL 2692416, at *1.  Nevertheless, under a Jackson analysis, such a claim fails.

"When reviewing a challenge to the sufficiency of the evidence, a habeas court asks '[w]hether, after viewing the evidence in the light most favorable to the prosecution, **any** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Rodrigues v. Rodrigues, 701 F. Supp. 3d 89, 101 (D. Mass. 2023) (Mastroianni, J.) (quoting Jackson, 443 U.S. at 319).

Here, Rivera **admitted** that he had pleaded guilty not just to assault with intent to commit a felony, but also to assault with "intent to kill" and assault with a dangerous weapon during his sentencing enhancement plea colloquy.  Rivera II, 2022 WL 414146, at *1.  The Massachusetts Appeals Court ruled that Rivera's prior conviction for "assault with intent to kill" was

sufficiently proved to be a predicate "violent crime" given

that:

> the prosecutor submitted additional evidence when she
> specified during the plea colloquy that the defendant
> shot the victim with the intent "to kill."  That
> sufficed to prove that the defendant's prior offense
> of assault with intent to kill was a violent crime as
> defined in the ACCA . . . because it involved the
> intentional use of physical force against the victim.

Id.  The underlying criminal statute does not describe intent to

"kill," but rather only to "commit a felony."  Mass. Gen. Laws

ch. 265, § 29.[7]  The Commonwealth supplied the factual intent in

its brief summary, to which characterization Rivera agreed:

"intent to kill."  The Judge confirmed this characterization

with Rivera.  More was not needed.

Further, with intent to kill established, the Massachusetts

Appeals Court ruled that Rivera's prior conviction of Assault

and Battery with a Deadly Weapon, based on the same incident,

was sufficiently proved to be a predicate "violent crime":

---

[7] Chapter 265, Section 29 of Massachusetts General Laws
provides:

> Assault; intent to commit felony; punishment

> Section 29. Whoever assaults another with intent to
> commit a felony shall, if the punishment of such
> assault is not hereinbefore provided, be punished by
> imprisonment in the state prison for not more than ten
> years or by a fine of not more than one thousand
> dollars and imprisonment in jail for not more than two
> and one half years.

Mass. Gen. Laws ch. 265, § 29.

> [T]he prosecutor specified during the plea colloquy
> that the defendant committed the [Assault and Battery
> with a Deadly Weapon] by means of a "gun" with which
> he "shot" the victim with intent "to kill."
> [Commonwealth v. Ashford, 486 Mass. 450, 460 (2020)].
> A firearm "clearly qualif[ies]" as a deadly weapon
> within the meaning of the ACCA definition of violent
> crime, G. L. c. 140, § 121.  Commonwealth v. Rezendes,
> 88 Mass. App. Ct. 369, 375 n.7 (2015).  In these
> circumstances, the [Assault and Battery with a Deadly
> Weapon] did amount to the "paradigmatic" version of
> the offense: "intentionally shooting a person without
> killing the individual," which is "undoubtedly a crime
> of violence" as defined in the ACCA.  [Ashford, 486
> Mass at 467].

Rivera II, 2022 WL 414146, at *2.  In sum, Rivera "admitted that

he had previously been convicted of assault with intent to kill

and assault and battery by means of a dangerous weapon" based on

the facts that the Commonwealth had presented to the Court.  Id.

at *1.

    The above-stated facts are confirmed from a plain reading

of the transcript of the sentencing:

> THE COURT:  At this point, I'm going to ask the
> prosecutor to recite the facts regarding the enhanced
> portion of the indictments which the Commonwealth
> would be prepared to prove at trial.
>
>     Please listen carefully to the prosecutor's
> statement of the facts so that you can then respond to
> the follow-up questions I will put to you when she's
> done.
>
>     [THE DEFENDANT:] [sic] Yes, ma'am.
>
> MS. KARCASINAS:  Thank you, your Honor.  Had the
> Commonwealth proceeded to trial on the armed career
> criminal enhancement, it would have offered evidence
> that on June 21st of 2007, Worcester police officers
> were dispatched to 85 Chatham Street for a shooting.

[18]

Upon their arrival, officers found an Edwin Valentin motionless in the street.  Officer Bill Pero of the Worcester Police Department located an entrance wound in Mr. Valentin's upper right arm and his chest area. As the officers tried to speak with him, they noted he was going in and out of consciousness.

The police spoke to the hospital that indicated Mr. Valentin suffered a single gunshot wound to his bicep which entered the right lateral side of his chest, and the caliber projectile became lodged into his spinal cord.

Through an investigation, police then spoke to Mr. Valentin on June 5, 2007, when he had been moved out of the intensive care unit.  He told police that the person who shot him is a male that goes by the name of Macho and that he drives a gray BMW.  He also identified Macho out of a photo array.

He told police that Macho had been partying with him and his group of friends earlier when Macho left. Mr. Valentin then went outside and saw Macho.  Macho said something to him which he could not understand, raised a gun, and shot him.  Mr. Valentin told police that the two have never had any problems with one another.

The person who was identified by Mr. Valentin as being Macho was later identified by the Worcester Police Department as the defendant before the Court today, Heriberto Rivera.

The defendant was convicted on Docket No. -- out of the Worcester Superior Court, Indictment Number -- excuse me -- 07-2023-1.  **He was convicted of assault to kill and assault and battery with a dangerous weapon.**  That occurred on October 27th of 2009.

**And that would have been the evidence that the Commonwealth would have offered at trial.**

THE COURT:  And after conviction, what was the sentence he received?

MS. KARCASINAS:  Your Honor, on the **assault to kill**, the defendant received a three- to five-year State

[19]

Prison sentence.  On the **assault and battery with a dangerous weapon**, he did receive five years' probation.  He did violate probation and he was given a two- to two-year-and-one-day State Prison sentence.

THE COURT:  Okay. Thank you.

MS. KARCASINAS:  Thank you, your Honor.

THE COURT:  Did you hear the statement that the prosecutor read to me, Mr. Rivera?

THE DEFENDANT:  **Yes, your Honor.**

THE COURT:  **And is it true that you not only committed the acts that were described to me, but that you were found guilty and sentenced to a State Prison sentence on the assault with intent to kill and five years' probation on the assault and battery with a dangerous weapon,** and ultimately violated that probation and received a two-year sentence.  Is all that true?

THE DEFENDANT:  **Yes, your Honor.**

THE COURT:  You understand that by pleading guilty to those things or admitting to those things, you are pleading guilty?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  **So it is your request formally to plead guilty to these armed career criminal offenses. Is that true?**

THE DEFENDANT:  **Yes, your Honor.**

THE COURT:  Do you understand that by doing this, by pleading guilty, you're giving up the right to a trial, with or without a jury, to determine your guilt or innocence as to this portion of the indictments?

THE DEFENDANT:  Yes, your Honor.

Sentencing Tr. 4-18 – 4-21 (emphasis added).  Rivera has not met

his burden on this issue: there were sufficient facts presented

to the sentencing court.  As a result, Rivera's habeas claims as to factual sufficiency concerning the factual underpinnings of ACCA enhancements (Ground Four) fails.[8]

### E. The Massachusetts Appeals Court's Affirmance of the 9-10 Year Sentence on Rivera's Third Count for Possession of Cocaine with Intent to Distribute Was Neither an Unreasonable Application of Supreme Court Precedent, nor an Unreasonable Determination of Facts (Ground Three).

Rivera argues that the Appeals Court's affirmance of the Superior Court's sentence of 9-10 years on his conviction for possession of cocaine with intent to distribute was "imposed contrary to" and based on an "unreasonabl[e] appl[ication of] Supreme Court precedent," entitling him to relief under Section 2254(d)(1).  Pet'r's Mem. 24-25.  Specifically, Rivera points to United States v. Booker, 543 U.S. 220 (2005) and Gall v. United States, 552 U.S. 38 (2007).  Id.  Rivera claims that the erroneous application of these precedents resulted in "a decision that was an erroneous determination of facts, pursuant to 28 U.S.C. § 2254(d)(2) when sentencing [] Rivera for a term of [9-10][9] years for Count 3."  Id.

_____

[8]  In addition, to the extent that Rivera attempts to bring a Due Process claim under the Fourteenth Amendment, there is no basis for any due process violation based upon the record before this Court.

[9] Rivera mistakenly asserts that Rivera was sentenced to 10-12 years on this Count.

Again, the Commonwealth correctly argues that Booker and
Gall's holdings, as applied here, are relevant to a **federal**
district court, sentencing **federal** defendants for violations of
**federal** law.  Resp't's Opp'n 5-6.  Rivera's reliance on these
cases is therefore misplaced; rather, Rivera's "sentencing is a
question of state law and this Court does not reexamine the
Massachusetts Appeals Court's determination that the Superior
Court used proper factors in sentencing."  Gaines v. Vidal, 224
F. Supp. 3d 79, 92 (D. Mass. 2016) (Casper, J.) (first citing
Estelle, 502 U.S. at 67-68; and then citing Kater v. Maloney,
459 F.3d 56, 61 (1st Cir. 2006) (noting that federal courts do
not review errors of state law on habeas)); see Swarthout, 562
U.S. at 219.  The claim under Section 2254(d)(1) fails.

Rivera's claim fares no better under the factual prong of
Section 2254(d)(2).  That provision "requires that the state
court's decision be 'based on an unreasonable determination of
the facts' on the record before that court."  St. Jean, 116 F.
4th at 79 (quoting Section 2254(d)(2)).

Rivera presses that his sentence on Count 3 was imposed by
a "mistake" that went unnoticed, and that the sentence was
unexplained and based upon improper factors or an ambiguous
record.  Pet'r's Mem. 25-30.  Rivera adds in his reply that "due
process imbedded in the Fourteenth Amendment and Fifth Amendment
requires a trial court to 'adequately explain the chosen

[22]

sentence.'"[10]  Reply 4 (quoting Gall, 552 U.S. at 50).  As the Commonwealth correctly argues, however, the over-arching factual premise of all Rivera's arguments is meritless.  Resp't's Opp'n 10-14.

A review of the sentencing transcript reveals that the Trial Justice carefully considered the sentencing recommendation of the prosecutor at the sentencing hearing, and Rivera's counsel's sentencing recommendation, and then sentenced Rivera. The Court provides the relevant portions of the transcript here:

THE COURT:  So what do you say, then, Ms. Karcasinas? What does the Commonwealth recommend?

MS. KARCASINAS:  Your Honor, in regard to the Commonwealth's recommendation, it's based largely in part on the defendant's Board of Probation record. When the defendant was 18 years old, he entered the criminal justice system.

In looking at his Board of Probation record, at just the age of 18, he picked up his first firearms offense.  And I suggest that's where the defendant was given his first break.  He was given a suspended sentence. He violated it and was sentenced to six months in the House of Corrections.

THE COURT:  Beg your pardon.  As you're speaking, I'd like to look at the Board of Probation record, which I know I have seen before, but I'd like to review it again, please.

(Document handed to the Court.)

---

[10] It is not clear that the constitutional claims relating to the purported mistake have been exhausted.  The Court need and does not reach the exhaustion issue presented by the Commonwealth, because the Court is denying relief on the merits of such claims.  See 28 U.S.C. § 2254(b)(2).

THE COURT:  Thank you.  Okay.  So at age 18, he got a
conviction for --

MS. KARCASINAS:  For a firearms offense, your Honor.
That was out of the Worcester District Court.  It's
for two counts of possession of a firearm.

    He was given a break.  He was given a suspended
sentence.  He violated it.  He did six months in the
House of Corrections.  Instead of attempting to better
his life, he continued down the wrong path.

    Shortly thereafter that, your Honor, in 2007, he
was involved in a shooting.  He shot a man who claims
that they had no -- you know, no problems with one
another. The man was critical.  The man almost died.

    I'd suggest to the Court that's where he was
given break number two.  He was given a three- to
five-year State Prison sentence, and he was given the
opportunity at probation from and after.

    Once again, the defendant gets out of State
Prison.  He's on probation.  He violated it not once,
but twice, and was sent back and did another State
Prison sentence of two years to two years and one day.

    Now, we have heard from the defendant during the
plea that while he was in State Prison, he got his
GED.  Upon getting out of his second State Prison
sentence, he could have done something with that.  He
could have looked for a job.  He could have gone back
to school.  But no.  He then engages in criminal
behavior even more.  He's once again, for a third
time, caught with a firearm, has since been convicted
of drugs.

    I suggest to the Court that the defendant is
averaging one firearm conviction for every ten years
of his life.

    This is a man who doesn't listen to what the
Courts tell him to do.  He doesn't adhere to any rules
set by the Court.  He does not care.

    I point out to the Court that while your Honor
was the sitting judge for the trial, this was an

[24]

apartment that his sister rented.  And I would point
out she did provide statements to the Commonwealth,
and in her statements, mentions how she had two young
children living in this apartment.

> So you have this man right here, who has a child
of his own, still playing with guns, dealing drugs,
bringing a loaded firearm into an apartment where
there's two young kids.

> And he then involves a -- at the time, a
19-year-old girl in helping him cover up his firearm
charge and his drug charges.

> I suggest to the Court that based on his previous
record that he be sentenced to ten to twelve years in
State Prison.

Sentencing Tr. 4-26 - 4-29.  Ten-to-twelve years is consistent

with a total aggregate sentence for the offenses at issue.

After hearing from Rivera's counsel, the Trial Justice observed:

> THE COURT:  Well, I have to note that it is a sad
state of affairs that the defendant did not seek
professional help that he maybe needed at an earlier
age, and that led him, potentially, along with other
factors, not to realize his potential.

> At the age of 30, I'm witnessing basically, as I
do often in court, a wasted life that affects not only
him, but his family, an innocent eleven-year-old girl.
He's got to face punishment for his past and his
present misdeeds.

> I have to take into account the public safety
component.  This man has shown himself to be
consistently and repeatedly, as the prosecution said,
a threat to other members of society by the possession
of guns, and now drugs with the intent to distribute.
They're very serious offenses.  And then in
conjunction with his prior record, it's an extremely
serious situation.  Therefore, it merits a serious
sentence.

Id. at 4-31 - 4-32.  Rivera gave a short allocution:

[25]

THE DEFENDANT:  Your Honor, I just wanted to say that I'm not no criminal.  And I know I've done a lot of mistakes and I have struggled with myself mentally, you know, and I am willing to seek help, you know, and I've been trying to.  I just have a problem trusting people.  The only person I have spoke to is my mother, you know.

And I give you my word that if you give me this one last chance, then you will not ever hear from me again.  I will leave Massachusetts.  I will go with my father in Puerto Rico.

Id. at 4-33.  The Court then explained:

THE COURT: I believe people deserve chances, second chances, even third chances and fourth chances. But by the age of 30, with a long history of not having taken advantage of those chances and committing serious crimes, I can only guess at what the future holds will be consistent with what the past showed.

And therefore -- I take no pleasure in the sentence I'm going to give you. It's going to be significant.  It's not going to be as much as the Commonwealth's looking for.

But you're still going to come out of incarceration at whatever age it is. You're still going to be a father and you're still going to have the chance to be a productive member of society. That's up to you, if you take that road, just as you've promised that you would if I give you a short sentence.

What you make of your life going forward is up to you, and that's entirely on you. I am imposing a sentence which I think is merited under all the circumstances, based on your past and present convictions.

And I truly hope that you find a way not to define yourself on the basis of these convictions going forward, but to figure out a way in which you can be a productive member of society and a responsible father to your daughter.  That's what I hope, anyway.

[26]

Id. at 4-34 – 4-35.  After the Court explained the necessity of
a serious sentence, the Clerk clearly announced that sentence:

> THE CLERK:  Judge, may the sentence be imposed?[11]
>
> THE COURT:  Yes.
>
> THE CLERK:  Mr. Rivera, **all sentences are to run
> concurrent with each other.**  The Court, having
> considered the offenses of which you stand convicted,
> on Count 1, possession of firearm without FID card as
> a career criminal 1; Count 2, possession of ammunition
> without an ID card as a career criminal 1; and
> possession of cocaine with intent to distribute, the
> Court, having considered the offenses of which you
> stand convicted, **orders you be sentenced to the Mass.
> Correctional Institute at Cedar Junction for a period
> of not less than nine, no more than ten years.  All
> these sentences, as stated, will run concurrent with
> each other.**

Id. at 4-35 (emphasis added).

Rivera provides conjectural arguments as to the Trial
Justice's exercise of discretion in imposing the sentence.
Rivera's narrow reading of the transcript ignores the
Commonwealth's detailed recitation of Rivera's failed
rehabilitation, increasing recidivism, and dangerousness.

---

[11] The practice in Massachusetts, unlike in the federal
court, appears to be for the Clerk to announce the sentence.
See Commonwealth v. Grundman, 479 Mass. 204, 206 n.2 (2018)
("Given that clerks are authorized to announce a defendant's
sentence in court, in the presence of the sentencing judge, the
clerk's announcement of the defendant's sentence would
constitute actual notice of the terms that were announced.").

To the extent that Rivera argues that a factor was considered in his sentencing in violation of **federal** law, the claim is meritless.  The Commonwealth's statements in support of the sentencing recommendation, and the Trial Justice's observations cannot be read to suggest, as argued by Rivera, that he was somehow being punished for "not go[ing] to college and [because he] did not get a well-paying job."  Pet'r's Mem. 29.  Rather, the Trial Justice apparently disagreed with the Commonwealth's recommendation of a 10-to-12-year aggregate sentence, and after considering a number of factors, instead sentenced Rivera to a term of 9-to-10 years concurrent on all counts of conviction, which was at or below the statutory maximum on all three counts.  The sentence indicates that the Trial Justice was fully cognizant of the sentencing options available to him.[12]

The record before this Court demonstrates that the Trial Justice made no mistake: in the sentencing of a recidivist engaging in dangerous criminal activities, the Trial Justice issued a serious sentence and explained his reasoning.  Even if reasonable minds **might** differ as to the facts, a reasonable

---

[12] It is undisputed that Rivera's 9-to-10-year sentence for possession of cocaine with intent to distribute adheres to the state maximum sentence of 10 years.  See Mass. Gen. Laws ch. 94C, § 32A(c); Resp't's Opp'n 8 n.4.

disagreement about the interpretation of the facts compels a ruling that Rivera has not met his substantial AEDPA burden. See Wood, 558 U.S. at 293; St. Jean, 116 F. 4th at 79 ("This showing cannot be made when '[r]easonable minds reviewing the record might disagree' about the finding in question." (alteration in original) (quoting Brumfield, 576 U.S. at 314)).

## III. CONCLUSION

"The writ of habeas corpus is an extraordinary remedy that guards only against extreme malfunctions in the state criminal justice systems." Watkins, 36 F. 4th at 384 (quoting Shinn, 36 F. 4th at 384). Rivera has failed to meet his high burden under either prong of Section 2254(d) to obtain this extraordinary relief. Rivera's petition for writ of habeas corpus, ECF No. 1, is therefore **DENIED** and this action is **DISMISSED**. The Clerk shall enter a separate order of dismissal.

Pursuant to 28 U.S.C. § 2253(c)(2) and Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a certificate of appealability is hereby issued as to all issues decided by the Court in this Memorandum and Order because Rivera has made a substantial showing of the denial of a constitutional right inasmuch as "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to

deserve encouragement to proceed further.'" <u>Slack</u> v. <u>McDaniel</u>, 529 U.S. 473, 484 (2000) (quoting <u>Barefoot</u> v. <u>Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

**SO ORDERED.**

<u>/s/ William G. Young</u>
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[13]

---

[13] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 46 years.